NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TINA B., | ) | |
| | ) | Supreme Court No. S-15229 |
| Appellant, | ) | |
| | ) | Superior Court Nos. |
| v. | ) | 3PA-11-00012CN/00015CN/00016CN |
| | ) | |
| STATE OF ALASKA, | ) | MEMORANDUM OPINION |
| DEPARTMENT OF HEALTH & | ) | AND JUDGMENT* |
| SOCIAL SERVICES, OFFICE OF | ) | |
| CHILDREN'S SERVICES, | ) | No. 1505 - July 2, 2014 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances: Shelly K. Chaffin, Law Office of Shelley K. Chaffin, Anchorage, for Appellant. Janell M. Hafner, Assistant Attorney General, and Michael C. Geraghty, Attorney General, Juneau, for Appellee. Lisa Wilson, Assistant Public Advocate, and Richard Allen, Public Advocate, Anchorage, for Guardian Ad Litem.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

---

\*        Entered under Appellate Rule 214.

Tina B. appeals the trial court's order terminating her parental rights to three of her children.[1] She challenges the trial court's finding that her mental health issues placed, and continue to place, the children at substantial risk of harm, and its finding that the Alaska Department of Health and Social Services, Office of Children's Services (OCS) made reasonable efforts to reunify her family.[2] Finding no error, we affirm the trial court's order terminating Tina's parental rights.

The trial court found the children were in need of aid under AS 47.10.011(11) because it found that Tina "has mental health issues that place the children at substantial risk of physical harm or mental injury."[3] Tina acknowledges that she suffers from mental illness, but she asserts that her condition was no worse at the time of the termination trial than it was in 2009, when OCS returned her children to her after having had them in its custody, and that OCS thus could not demonstrate to the trial court by clear and convincing evidence that Tina's mental condition was of a nature and duration that placed the children at substantial risk of physical harm or mental injury. But contrary to Tina's assertions, the testimonies of expert witnesses Dr. Grace Long and

---

[1]    We use pseudonyms to protect the family's privacy.

[2]    The trial court's determinations that Tina's conduct or conditions within her control placed her children at risk of harm, and that she failed to remedy such conduct or conditions, are factual findings that we review for clear error. *Sherman B. v. State, Dep't of Health & Soc. Servs.*, 290 P.3d 421, 428 (Alaska 2012). The trial court's determination that OCS made reasonable efforts to reunify Tina with her children is a mixed question of fact and law. *Id.* We review the factual elements of the determination for clear error and the legal elements de novo. *Id.* at 427-28.

[3]    AS 47.10.011(11) allows a trial court to find a child to be in need of aid if the child's parent "has a mental illness, serious emotional disturbance, or mental deficiency of a nature and duration that places the child at substantial risk of physical harm or mental injury."

Dr. Melinda Glass provide adequate support for a finding that Tina's mental condition did place the children at substantial risk of harm.

For example, Dr. Long's report following an April 2011 evaluation noted that Tina was living in her car with two dogs, that her "major anxiety disorder" was well documented, that she demonstrated "poor judgment, emotional turbulence, idiosyncrasies, suspicion, and questionable decision-making," and that "[h]er repertoire of coping skills appears to be limited and real-life circumstances may easily overwhelm her, triggering anxiety, irritability, and negatively influencing her judgment and decision-making process." At the termination trial Dr. Long testified that Tina was unable to explain why two of her children were receiving mental health treatment. Dr. Long testified that she was concerned about Tina's ability to safely and appropriately parent five children.[4]

Dr. Glass's initial report, following her evaluation of Tina in July and August 2011, noted that "[t]here have been serious allegations of sexual abuse, as well as physical abuse, of her children by the men in her life. [Tina] basically minimizes, denies knowledge, or discounts these allegations." The report concluded that Tina "does not appear competent or ready to parent her children. . . . She seems barely able to manage her own life much less her children's."

Dr. Glass's more recent report, following her evaluation in March and April 2012, indicated that Tina presented with "serious mental health issues and problems functioning." According to this report, Tina had "made little to no progress" in the interval between the two evaluations. At the termination trial, when asked what type of issues Tina struggled with on a daily basis, Dr. Glass replied, "Most everything." Dr.

---

[4] Two other daughters were initially involved in this case but are not involved in this appeal.

Glass testified that as of the time of the evaluations she did not believe Tina was capable of safely parenting her children or of providing her sons with the stability, care-taking, and therapy they required. She agreed that in the absence of stable, appropriate parenting the boys' development would be "dramatically" and "devastating[ly]" impacted.

Tina next argues that the trial court erroneously found that she had not remedied the conduct or conditions that endangered her children. She points out that the psychological evaluations introduced at the termination trial were completed more than a year before the trial. Dr. Long and Dr. Glass specified that their opinions about Tina's condition were based on the information they had when their evaluations were conducted.

Tina argues that after her most recent evaluation, she consistently participated in therapy, took medication, and participated in other elements of her case plan. But Tina's assertions are supported primarily by her own testimony. Tina does not address the trial court's findings that she continued to pose a danger to her children because she "ha[d] little insight into the children's treatment" and that she resisted OCS's efforts to provide her with services to help reunify her family.

The trial court's finding that the children remained at risk is supported by ample evidence. For example, Tina denied that her sons had experienced issues of violence and had physically abused pets in their foster homes, in spite of evidence to the contrary. Her refusal to acknowledge the boys' need to have such issues addressed would place the children at risk if they were returned to her.

There is also substantial evidence that Tina resisted assistance from OCS. Tina's social worker testified that Tina avoided working with OCS in the year leading up to the termination trial. Tina herself testified that she no longer had a relationship with the social worker and no longer viewed OCS as supportive. And Tina's therapist

noted in a record from a January 2013 session that Tina "feels that people at OCS are against her and this drives her distrust of that system." Tina now argues that she never stopped cooperating with OCS, but she relies primarily on events that happened more than a year before the termination trial, a period during which OCS does not dispute that Tina was cooperative.

Finally, Tina argues that OCS did not make reasonable efforts to provide her with services to reunify the family. Her main assertions are that OCS erred by (1) not providing Dr. Long and Dr. Glass with sufficient information about her history and (2) not following Dr. Glass's recommendation that Tina be evaluated by a psychiatrist.

The record supports Tina's contention that OCS did not provide the psychologists who evaluated Tina with much background information. Dr. Long testified that she observed indications of depression or posttraumatic stress disorder, but indicated she was not given sufficient background information to make a diagnosis during Tina's evaluation. But Dr. Long had no hesitancy about diagnosing a major anxiety disorder or drawing conclusions about Tina's poor judgment, emotional turbulence, questionable decision-making, limited coping skills, irritability, suspicion, and inability to safely and appropriately parent her children.

Dr. Glass's initial report indicated that she did not receive Tina's mental health treatment records and medication records before the evaluation. Dr. Glass's report from her second evaluation indicated that before that evaluation she received some of Tina's mental health treatment and history records, but that records from several other sources had not been provided. Dr. Glass noted that her conclusions were "limited by the information that was not provided."

At the termination trial, Dr. Glass stated that generally such background information is provided by OCS and that such information is "important." Yet despite

- 5 - 1505

the sparsity of background information provided to her, Dr. Glass was able to diagnose Tina with depressive disorder and personality disorder and to conclude that Tina did not appear competent or ready to parent her children. While it may have been preferable for OCS to have provided Dr. Long and Dr. Glass with additional background information for use in conducting their evaluations, we cannot say that its failure to do so rendered OCS's efforts unreasonable.

Finally, we reject Tina's assertion that OCS did not make reasonable reunification efforts for her by failing to comply with Dr. Glass's recommendation that Tina be seen by a psychiatrist. The record contains abundant indications that throughout this case Tina was under the care of a psychiatrist. For example, Dr. Glass's second report noted that Tina had been cared for by one psychiatrist from 2005 until September 2010, and that she participated in a psychiatric evaluation with another psychiatrist in April 2010.

Dr. Long apparently did not have this information when she evaluated Tina, but Tina stated that she had been taking a number of psychiatric medications for anxiety and depression. Tina also stated that her medications were prescribed through a behavioral health clinic, where she was participating in individual therapy. Dr. Long testified that this information indicated a level of stability in Tina's treatment that differentiated her from patients whose conditions were not being adequately managed.

At the termination trial, Tina testified that she had participated in mental health services with a psychiatrist before beginning services at a behavioral health clinic, where she was participating in monthly medication management meetings. In January 2012, after Dr. Glass conducted her evaluations and made her recommendations, Tina informed the trial court that she had completed a psychiatric evaluation through Mat-Su Regional Hospital and that she intended to schedule a medication review. In her reply

brief Tina concedes, "[I]t appears that [Tina] engaged in a psychiatric/medication review." Because Tina was already under psychiatric care, we reject her argument that OCS's failure to provide her with a psychiatric evaluation was unreasonable. We conclude that OCS's reunification efforts were reasonable given Tina's situation and the facts of this case.

We AFFIRM the superior court's order terminating Tina's parental rights to her three children.